DWIGHT J. McCANN, AND PINNEY AND COMPANY, APPELLANTS, v. THE ÆTNA INSURANCE COMPANY OF HARTFORD, CONNECTICUT, APPELLEES.

Insurance: EVIDENCE NECESSARY TO ESTABLISH A CONTRACT FOR.—A decree will not be rendered against an insurance company, to compel it to issue a policy upon an alleged contract of insurance, unless there is conclusive evidence that such contract was actually made.

———: NOTICE AND PRELIMINARY PROOFS. Although there may be sufficient evidence to establish a parol contract of insurance, yet before the assured has any right of action for the loss sustained, he must make and deliver to the company a particular account of the loss, signed and sworn to, together with a statement of the whole value of the subject insured, his interest therein, and when and how the loss originated: the giving of notice and taking of preliminary proofs are conditions precedent, and must be performed before the assured is entitled to receive payment, or to sue for the loss, unless the company by some act on its part waives the performance of such conditions.

THIS was a suit in equity commenced in the district court of Otoe county, on the twenty-second day of February, A. D. 1866, by Pinney and Company and Dwight J.

McCann, against The Ætna Insurance Company of Hartford, Connecticut, wherein the complainants prayed for a decree of the court, ordering the defendant to make, execute, and deliver to them, a contract of insurance, and to recover the sum of four thousand five hundred dollars, alleged to be due on a loss suffered by them in the sinking of the steamboat Sunset, the plaintiffs being owners of one-half of said boat, and claiming to have existing at the time of the loss, an insurance in the defendant's company, to the amount stated, upon one-half of the hull of said boat.

It appeared in evidence that on the 11th day of October, 1865, while the steamer Sunset was lying at the wharf in Saint Louis, Missouri, the plaintiff, McCann, went to the agent of the defendant, at Nebraska City, Nebraska, James Sweet, and applied for an insurance on the one-half of said steamboat. The application was made verbally. Sweet, the agent, told McCann that he could not issue the policy, but would take his application and send it to the office of the general agent of the company. No written application for such a policy was made, and no premium paid. On the 17th of the same month, the steamboat, while on its way up the Missouri river, was wrecked and destroyed. Notice of the loss was given orally to the agent of defendant, at Nebraska City. No other notice or proofs of the loss seem to have been given to the defendant. On the 23d of October, 1865, the premium was tendered to the agent of the defendant, but was not received. The plaintiffs then brought this suit. The cause was tried before Mr. Justice Lake, sitting in the district court for Otoe county, who rendered a decree therein, dismissing the bill at the costs of plaintiffs. The plaintiffs then appealed to this court under the provisions of Title XXI of the code of civil procedure. *Revised Statutes*, 1866, 513. Proceedings were commenced in this court in May, 1871, but Mr. Chief Justice

Mason having been of counsel, and Mr. Justice Lake having tried the cause in the court below, could not sit in this court, and the cause was continued from term to term, until its trial at the present term before ASSOCIATE JUSTICES GANTT and MAXWELL.

*Isaac N. Shambaugh*, for appellants, submitted the following points:

I.    An oral or verbal contract of insurance is valid unless the charter of the insurance company, or the statute laws of the state require the same to be in writing. *Bonner on Insurance*, 31, 215–217. *Parsons' Mercantile Law*, 403. *Digest of Fire Insurance Decisions*, 294. *Constant v. The Alleghany Insurance Co.*, 3 *Wallace Jr.*, ———. *The City of Davenport v. The Peoria Marine and Fire Insurance Co.*, 17 *Iowa*, 282, 283, 284. 1 *Phillips on Insurance, sec. 9.*

1.    Even if the charter of the company or the laws of the state, require the policy to be in writing, an *oral agreement to insure* is valid and binding upon the company. *The City of Davenport v. The Peoria Insurance Co.*, 17 *Iowa*, 284.

2.    A contract of insurance may be made by correspondence between the parties. *Bonney on Insurance*, 31. *Tayloe v. Merchants' Fire Insurance Co.*, 9 *How.*, 390.

II.    It was not necessary that the premium should be paid in advance. *Bonney on Insurance*, 30, 71. *Bouvier's Law Dictionary*, 356, second edition.

III.    Pre-payment of premium may be waived by the agent. *Bonney on Insurance*, 238. *Sheldon v. The Atlantic Fire and Marine Ins. Co.*, 26 *New York*, 460. *The City of Davenport v. The Peoria Marine and Fire Insurance Co.*, 17 *Iowa*, 289.

IV. As to usage, *Baxter v. Massasoit Insurance Co.*, 13 *Allen*, 320. *Bonney on Insurance*, 31, 213. *Story on Agency*, *Sec.* 77.

V. The great rule between insurer and insured is, that the parties must act in good faith. *Parson's Mercantile Law*, 432. *Bonney on Insurance*, 56.

VI. The principal is liable for the acts of his agent within the scope of his general authority, though the agent violates his private instructions. *Story on Agency*, *Sections* 73, 133, 452. *Bonney on Insurance*, 84, 85. *Digest Fire Insurance Decisions*, 13. *The City of Davenport v. The Peoria Marine and Fire Ins. Co.*, 17 *Iowa*, 276.

VII. As to scope of agent's business and authority, 2 *Phillips on Insurance*, *Sections* 1872–1880. *Bonney on Insurance*, 81.

VIII. Any rule of an insurance company may be waived expressly or by implication, by conduct of officers or agents, and alterations made; and written agreements may be changed by subsequent oral agreements. *Bonney on Insurance*, 32. *First Baptist Church in Brooklyn v. Brooklyn Fire Insurance Co.*, 18 *Barb.*, 69. *The Peoria Marine and Fire Ins. Co. v. Lewis*, 18 *Illinois*, 553.

IX. Contract of insurance is valid and binding though the policy has not been delivered to the assured. *Bonney on Insurance*, 67. *Tayloe v. Merchants' Fire Insurance Co.*, 9 *How.*, 390. *Reynold's Life Insurance*, 64. *The City of Davenport v. The Peoria Marine and Fire Insurance Co.*, 17 *Iowa*, 276, *and cases therein cited.*

X. If the defendant's agent agreed to insure the complainant's interest in the steamboat Sunset, the defendant

is liable for the loss, although the contract was not in writing, the policy not delivered and the premium not paid, and although the agent made the contract contrary to the directions and instructions of the defendant. The contract or agreement to insure is the principal act, and the making and delivery of the policy and the payment of the premium are mere incidents which may be waived by the parties expressly or by implication without destroying or impairing the validity of the contract, and when done subsequently, will have relation back to the time of doing the principal act. *Perkins v. Washington Insurance Co.*, 4 *Cow.*, 645. *Baxter v. Massasoit Insurance Co.* 13 *Allen*, 320.

XI. Where an agreement for insurance has been made, the court will decree specific performance of, and enforce the same. 3 *Pars. Contracts*, 374, *note k*. *Perkins v. Washington Insurance Company*, 4 *Cow.*, 645. *Tayloe v. Merchant's Insurance Co.*, 9 *How.*, 405.

And the court having acquired jurisdiction of the cause will not only decree a specific performance of the agreement, by compelling the insurer to make to the insured a policy as contracted for, but will proceed to give full relief by decreeing payment of the loss. *The City of Davenport v. The Peoria Marine and Fire Insurance Co.*, 17 *Iowa*, 288. 2 *Phillips on Insurance, Section* 1936.

XII. Silence of the insurer, refusal to pay the loss when notified of the same, and failure to object to the sufficiency of the preliminary proofs, amounts to a waiver of such proofs.

*S. H. Calhoun*, for appellee, argued the cause upon a brief filed by himself and *A. J. Poppleton*, and contended as follows:

Without recapitulating the facts of the case as shown by the pleadings and testimony, it is sufficient to say that the whole question of the right of the complainants to recover, is comprised in the inquiry:

I. As to the extent of the authority of the agent Sweet, who is alleged to have made the contract of insurance.

II. In the inquiry whether any contract of insurance was in fact made.

As to the first inquiry:

1. The proof shows conclusively that the authority of Sweet was not general, but special. In other words, he was a special agent, and not a general agent.

2. His authority in respect to insuring boats extended merely so far as taking risks upon the hulls was concerned —to receipt the proper applications and send the same to the general agent of the Ætna, which he represented, at Cincinnati. The proof shows that he had no authority to effect a contract of insurance upon the hull of the steamboat, and that McCann was aware of that fact at the time of the alleged contract of insurance. This being the case it was impossible for Sweet to make a contract binding upon the company, for the simple reason that being a special agent he had not the power and could not bind the company, even so far as McCann was concerned, whose duty it was in a case of that character to inquire into the extent of Sweet's authority. The legal proposition is this, that where the authority of an agent is general, the parties dealing with him are not bound to inquire into the extent of his authority; but where his agency is special, parties dealing with him are bound to inquire into the extent of his authority, and he cannot bind the principal beyond the scope of that authority. The following citations are conclusive on that point: *Dunlap's Paley's*

*Agency*, 198, *and cases cited.* 1 *Phillips on Insurance*, *Secs.* 20, 26.

As to the second inquiry:

1.  It is a further and fatal objection to a recovery in this case, that the facts shown do not amount to a contract of insurance. There was simply on the part of McCann, a *verbal* statement of an intention to make a proposal for a risk to be taken by the company, upon the hull of his boat, without following up such statement of intention by any actual proposal; and a declaration on the part of the agent, Sweet, of a willingness to receive such proposal, and forward it to Cincinnati, in the usual course of the company's business, for acceptance, and nothing that by any possible construction, could be regarded as a contract of insurance.

2.  It would be absurd to say that an application had been made for insurance and accepted, when such application was wholly silent in respect to the property sought to be insured—the amount of the risk sought to be protected—the premium to be paid—or the commencement or termination of the risk—and no details or particulars mentioned from which a third party or a court could in any way arrive at the terms of the contract between the parties; and it would be absurd to suppose that an agent acting in the capacity of Mr. Sweet, has accepted a proposal which was utterly void of all these necessary particulars.

3.  In any view which a court can take of it, it is impossible to reach the conclusion that there was any contract, or agreement of the minds of the two parties upon a definite state of facts amounting to a contract of insurance between these parties. There was a simple declaration of intention to make application, with an expression of a willingness to receive such application and give it the usual course of business in said company, by sending it to the general agent to be made effective or not.

4. Further, it seems from the evidence that the complainant's *claim* to recover only on a verbal agreement to make a policy, and Mr. Phillips, in section 14, says: "A party is not legally bound to the full extent of all the ordinary risks by an agreement to make a policy—the same being executory on both sides—without some memorandum signed by him to that effect."

5. The following authorities seem to show conclusively that under the facts proved in this case, no contract of insurance was effected on which a court of equity will relieve the complainants by directing the issuance of a policy, or rendering a decree for the amount claimed. 2 *Parsons on Contracts*, 5th *Ed.*, 351. *Suydam v. Columbus Insurance Co.*, 18 *Ohio*, 459. *Neville v. Merchant's Insurance Co.*, 19 *Ohio*, 452.

GANTT, J.

The plaintiffs claim that on the eleventh day of October, 1865, they made a verbal application to the agent of the defendant for an insurance on the one-half of the steamboat Sunset, and that the defendant by its agent, James Sweet, accepted such application, and agreed to take the risk. The defendant denies the alleged contract of insurance on the steamboat, and makes several other defenses. Considerable testimony was taken in the case, but the substance of all the testimony in respect to the alleged contract is that of McCann, one of the plaintiffs, that on the day above stated, he went to the office of James Sweet the agent, and by verbal agreement with him as the agent, he effected an insurance on the one-half of the steamboat in the Ætna Insurance Company, and that this conversation was the only one in which he made a direct application for such insurance; also that of James Sweet, the agent, that no such contract of insurance was made; that he told McCann he could not issue such policy,

but that he could take his application and send it to the office of the general agent, and that McCann quickly left his office without leaving a written application; and that of S. H. Calhoun stating that he was in the office of Sweet at the time the conversation occured between McCann and Sweet, and that Sweet formally told McCann he would write to the company and see if they would take the risk; that he expressly said he could not issue a policy on the hull of the boat, but it must be done by the home office, and that McCann left the office within five minutes after he entered it. It seems that Calhoun was the only person present at the time of the conversation between McCann and Sweet, and therefore all the testimony in regard to the conversation, and alleged contract of insurance is that of these three persons. We think this testimony is not sufficient to maintain the allegations of the petition. That of McCann stands without any support whatever, while that of Sweet is corroborated by that of Calhoun. And the most favorable construction which can be put on all this testimony for the plaintiff still leaves the matter in very great doubt.

In *Suydam v. The Columbus Insurance Co.*, 18 *Ohio*, 459, the rule is laid down, that in an action against an insurance company to compel it to issue a policy upon an alleged contract of insurance, such action cannot be sustained, unless there is conclusive proof that such contract was actually made. If the matter is left in doubt upon the whole evidence, the suit must be dismissed. *Neville, et al., v. The Merchants and Manufacturing Insurance Company*, 19 *Ohio*, 452. 2 *Parsons on Contracts*, 351.

But suppose the evidence was sufficient to establish a parol contract of insurance between the parties. Have the plaintiffs placed themselves in a position to secure a right of action, and maintain their suit to recover damages for the loss sustained by the sinking of the boat?

The assured, sustaining loss, is required forthwith to

give notice to the company or its agent, and as soon as possible thereafter to make and deliver in a particular account of such loss, signed and sworn to by him, together with a statement of the whole value of the subject insured, his interest therein, and when and how the loss originated so far as he knows or believes. All these requirements are conditions precedent to be performed on the part of the assured, and until such statements and proofs are produced, the loss shall not be deemed payable. It is said that the " assured cannot be presumed to be ignorant of the usages of the office to which he applies for insurance," and the law will not permit him on the ground of ignorance to claim exemption from producing the notice, statements or preliminary proofs, so indispensable to his demand of payment; at least all such proofs as may be in his knowledge or possession touching the nature and extent of the loss. And it seems to be the well settled doctrine in this country that the notice and statements, supported by oath, are conditions precedent, and must be performed before the assured is entitled to receive payment or sue for the loss, unless the company by some act on its part waives the performance of said conditions. *Angell on Insurance, Sec.* 226. *Columbus Insurance Co. v. Lawrence,* 2 *Peters,* 53. *Same v. Same,* 10 *Peters,* 513. *Haff v. Marine Ins. Co.,* 4 *John,* 135.

In the case at bar, it appears from the proofs that the plaintiffs did not comply with these conditions precedent, except that a copy of protest was either left with or shown to the agent.

If in law the plaintiff could, on the ground of ignorance, claim exemption from producing the preliminary proofs, yet in this case they could not be permitted to plead such ignorance, for the proofs show that they were fully notified to produce such statement.

J. B. Bennet, general agent for the company, testifies

that McCann called at his office in Cincinnati, Ohio, and in their conversation he "distinctly requested him to submit the proofs of his loss, to reduce the statement of facts to writing and verify them by oath, to produce a protest and submit any facts bearing directly or indirectly on his claim." McCann, in his testimony, fully corroborates this testimony of Bennet; he says "Bennet informed me that no statement of the facts or proofs had been received by him, and that he could not settle the matter — that there were many questions arising from the peculiar facts of the case, etc.;" that he "returned to Nebraska City, called on Mr. Sweet and asked him if he was prepared to pay the loss; he said he was not, and I brought the suit against the defendant." The statements, etc., were demanded of McCann and he refused to furnish them, and therefore the loss alleged to have been sustained by the sinking of the boat was not payable; and without the production of these proofs, certainly the agent might well say that he was not "prepared to pay the loss." The failure of plaintiffs to produce these preliminary proofs, we think are sufficiently pleaded in the answer. It is true the defendants plead other defenses in their answer, but that does not relieve the plaintiffs from the performance of the conditions precedent. "Good faith and fair dealing is of the essence of the contract of insurance," but the evidence shows that the plaintiffs have not so acted in the premises. They failed to produce the preliminary proofs, and when requested to do so they refused, and brought their suit; and as the alleged loss is not payable until these conditions precedent have been performed they cannot maintain their action.

MR. JUSTICE MAXWELL concurring, the judgment must be affirmed.

JUDGMENT AFFIRMED.